**SO ORDERED.**

**SIGNED this 19 day of November, 2013.**

_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. |
| LISA GAIL SKUMPIJA | 11-00338-8-SWH |
| DEBTOR | |
| LISA GAIL SKUMPIJA | |
| Plaintiff | ADVERSARY PROCEEDING NO. |
| v. | 13-00159-8-SWH-AP |
| DAVID M. WARREN, TRUSTEE | |
| Defendant. | |

### ORDER REGARDING MOTION FOR PRELIMINARY INJUNCTION AND MOTION TO ABANDON

The matter before the court is the motion of the plaintiff, Lisa Gail Skumpija, made in the complaint initiating this adversary proceeding, for a preliminary injunction against the sale of certain real property by the chapter 7 trustee, David M. Warren. A hearing took place on October 17, 2013,

in Raleigh, North Carolina. Following the hearing, supplemental briefs were filed by the defendant on October 28, 2013, and by the plaintiff on October 29, 2013.

## BACKGROUND

Lisa Gail Skumpija, plaintiff and chapter 7 debtor, filed the complaint initiating this adversary proceeding on September 26, 2013. The plaintiff seeks a determination of the extent, validity, and priority of liens against property located at 575 Chapel Ridge Drive, Pittsboro, North Carolina (the "Subject Property"). The plaintiff further seeks injunctive relief in order to prohibit the trustee's planned auction sale of the Subject Property, which was scheduled for November 20, 2013.[1] To that end, the complaint contains a motion for a preliminary injunction against any sale of the Subject Property by the trustee until the lien priority issue is resolved. The court has previously set forth a detailed recitation of the underlying transaction and dispute relevant to the present matter, in an order entered on July 26, 2013 in a related adversary proceeding, Warren v. Skumpija (In re Skumpija), Adv. Pro. No. H-11-00072-8-AP. However, for purposes of clarity and for the benefit of the record, the court will reiterate and supplement those facts where necessary.

Prior to the petition date, on June 10, 2008, the plaintiff acquired the Subject Property from her brother. Thereafter, the plaintiff executed a promissory note dated June 12, 2008, which was made payable to her mother, Janet Abreu, in the original principal amount of $500,000 (the "Abreu Note"). The Abreu Note provided that principal would be due (1) upon the sale of the Subject Property, in the amount of $200,000, and (2) upon the sale of a certain other parcel of property (the "Hawfields Drive Property"), in the amount of $300,000. The note further stated that it was given

---

[1] Plaintiff has advised the court that, in light of the uncertainty surrounding the proposed sale, it has been placed on hold pending determination of the defendant's motion for preliminary injunction and motion for abandonment.

to finance the purchase of the Subject Property and was secured by a deed of trust. On June 26, 2008, the plaintiff executed a separate promissory note in favor of Branch Banking and Trust Company ("BB&T") in the original principal amount of $339,250. The BB&T promissory note was secured by a deed of trust on the Subject Property, which was executed by the plaintiff and her husband on June 26, 2008, and recorded in Chatham County on July 1, 2008. More than a year later, on September 15, 2009, the plaintiff and her husband executed a deed of trust in favor of Janet Abreu as partial security for the Abreu Note, which purported to encumber the Subject Property (the "Abreu Deed of Trust").[2] The Abreu Deed of Trust was recorded in Chatham County on September 16, 2009.

On January 14, 2011, the plaintiff filed a petition for relief under chapter 7 of the Bankruptcy Code. Shortly thereafter, the chapter 7 trustee commenced an adversary proceeding on February 25, 2011, seeking avoidance of the Abreu Deed of Trust pursuant to §§ 548, 550 and 551 of the Code (the "Avoidance Action").[3] The complaint was subsequently amended on July 13, 2011, and April 25, 2012, adding a cause of action under § 544 in the later amendment. Ultimately, by order dated July 26, 2013, the court found the Abreu Deed of Trust invalid for failure to properly describe or identify the Abreu Note, and granted summary judgment to the trustee, allowing for avoidance of the Abreu Deed of Trust pursuant to § 544(a)(1).

---

[2] The Abreu Deed of Trust also listed the Hawfields Drive Property as collateral securing the Abreu Note.

[3] See Adv. Pro. No. H-11-00072-8-AP.

In light of the resolution of the Avoidance Action, the liens asserted against the Subject Property are summarized as follows:[4]

| Priority | Lienholder | Nature of Lien | Amount |
|---|---|---|---|
| 1st | Branch Banking & Trust Company | Deed of Trust | $330,000.00 |
| 2nd | Janet Abreu (AVOIDED BY CHAPTER 7 TRUSTEE) | Deed of Trust | $200,000.00 |
| 3rd | Branch Banking & Trust Company | Judgment Lien | $72,661.56 |
| 4th | Discover Bank | Judgment Lien | $12,054.18 |
| 5th | Discover Bank | Judgment Lien | $23,954.89 |

Shortly after the resolution of the Avoidance Action, on August 13, 2013, the trustee filed a motion to sell the Subject Property free and clear of liens, seeking to sell the property only if the purchase price is sufficient to satisfy the first lien to BB&T in the amount of $330,000. BB&T filed a response in support of the proposed sale on August 30, 2013, on the condition that the loan owed to BB&T is paid in full. The plaintiff objected to the trustee's motion on September 5, 2013, asserting that the bankruptcy estate would not benefit from the proposed sale; rather, the proceeds would be exhausted by the mortgage, holders of judgment liens, auction fees, and trustee fees. The

---

[4] In addition, the trustee asserts that the debtor owes ad valorem taxes to Chatham County for the 2013 tax year.

4

motion further expressed plaintiff's willingness to pay the bankruptcy estate $45,000 for its interest in the Subject Property, assuming the judgment liens could be avoided. At the conclusion of the hearing, the court found the proposed sale to be in the best interest of the estate, based on the assumption that the trustee would take the second priority position of the avoided Abreu Deed of Trust, and any sale proceeds above the amount of BB&T's mortgage lien would benefit the estate. An order was entered allowing the sale of the Subject Property free and clear of liens on September 13, 2013 (the "Sale Order").

On September 12, 2013, the plaintiff filed a motion in her bankruptcy case to abandon her interest in the Subject Property, asserting that the Subject Property has a fair market value of $400,000, and as such, no equity exists, providing inconsequential value to the bankruptcy estate. The trustee filed an objection to the abandonment motion on September 24, 2013, contending that the tax value of the Subject Property is $515,417, and because the estate assumes Ms. Abreu's lien position by virtue of the avoidance of the lien, the estate will benefit from the receipt of proceeds remaining after the first lien is paid.

On September 26, 2013, the plaintiff filed the complaint that initiated this adversary proceeding, seeking injunctive relief and a determination as to the priority of the liens on the Subject Property. It is within this complaint that the plaintiff filed the present motion for preliminary injunction. Filing the motion in this manner, however, does not comply with Local Rule 7065-1, which provides that "[a] motion for a temporary restraining order or for a preliminary injunction shall be made in a document separate from the complaint." E.D.N.C. LBR 7065-1. Further, the motion must be accompanied by a statement attesting to "compliance with Rule 7065, Federal Rules of Bankruptcy Procedure, regarding notice to opposing parties." Id. Rule 7065 requires notice to

"the adverse party," and when considering whether to allow the sale of an asset encumbered by multiple security interests, the trustee is not the only adverse party. There is no indication in the record that anyone other than the trustee was served with notice of the complaint and the preliminary injunction motion contained therein.

This procedural error proves to be of little practical import in light of the particular facts and circumstances of this case. Because an order was entered on September 13, 2013 allowing for the trustee's proposed sale of the Subject Property, and because the plaintiff seeks to enjoin the sale of the Subject Property claiming that such sale would be improper without first examining lien rights, the motion for preliminary injunction is functionally equivalent to a motion to reconsider or set aside the Sale Order. Thus, in the interest of judicial economy, and because the present motion was filed within 14 days of the Sale Order, the court will construe the present motion as a motion to reconsider the Sale Order pursuant to Rule 59 of the Federal Rules of Civil Procedure, made applicable in this proceeding by Rule 9023 of the Federal Rules of Bankruptcy Procedure.

The plaintiff contends that the trustee should not be able to sell the Subject Property because there will be no benefit to the bankruptcy estate. Specifically, she argues that although the trustee steps into the shoes of the holder of the Abreu Deed of Trust, what the trustee now holds in light of the result of the Avoidance Action is an invalid deed of trust. As such, plaintiff contends that § 551 of the Code preserves the lien for the estate *subject to defects under state law* and therefore the trustee's position is subordinate to the four prior properly perfected liens on the Subject Property. The trustee, on the other hand, takes the position that under § 551, any avoided transfer is preserved for the benefit of the bankruptcy estate without limitation. According to the trustee, this means that he stepped into the shoes of Ms. Abreu as a lienholder in a second priority position. In addition, the

trustee asserts that although unnecessary, he, as opposed to the plaintiff, could seek reformation of the Abreu Deed of Trust, which further bolsters his view that the lien is preserved for the benefit of the estate.

## DISCUSSION

In interpreting Rule 59(e), the Fourth Circuit has recognized three grounds for altering or amending an earlier judgment: "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Pacific Ins. Co. v. American Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998), cert. denied, 525 U.S. 1104, 119 S. Ct. 869, 142 L. Ed. 2d 771 (1999). "Reconsideration of a judgment is 'an extraordinary remedy which should be used sparingly.'" In re Bell, 2010 Bankr. LEXIS 2743, at *1-2 (Bankr. E.D.N.C. Sept. 3, 2010) (quoting Pacific Ins. Co., 148 F.3d at 403).

In this case, the plaintiff's arguments align closely with the third potential ground for relief from an order, i.e., to correct a clear error of law or prevent manifest injustice. The Sale Order was premised on the finding that the proposed sale is in the best interest of the bankruptcy estate. However, a closer review of the law governing lien preservation upon avoidance of a lien leads the court to find cause to reconsider its prior ruling and determine whether it was based upon an erroneous interpretation of law. In short, the manner in which the Abreu lien is preserved matters a great deal in this case. As more fully explained below, if the lien is preserved without limitation, such that it retains a second priority position, the proposed sale of the Subject Property may very well benefit the estate. If, however, the lien is preserved in its invalid state based on the Avoidance Action, the estate would not likely benefit from the proposed sale because it would fall to a fifth priority position, where the prospect of any remaining equity to satisfy the lien is doubtful at best.

The parties agree that upon avoidance of the Abreu lien, the trustee stepped into the shoes formerly occupied by Ms. Abreu, and pursuant to § 551 of the Code, the lien is automatically preserved for the benefit of the bankruptcy estate.  In fact, § 551 consists of one sentence which plainly states as follows: "[a]ny transfer avoided under section 522, 544, 545, 547, 548, 549, or 724(a) of this title, or any lien void under section 506(d) of this title, is preserved for the benefit of the estate but only with respect to property of the estate." 11 U.S.C. § 551.  Where the disagreement lies, and where the statute is silent, is in regard to priority in light of the trustee's successful avoidance of the Abreu lien as invalid.  Prior to the Avoidance Action, the Abreu Deed of Trust ranked second in priority, junior only to the BB&T mortgage in the amount of $330,000.  In light of the determination that the Abreu deed of trust is invalid for failure to properly identify the Abreu Note, however, it is the plaintiff's position that Abreu holds an unsecured debt, and accordingly the Abreu interest now ranks behind the secured interests of BB&T (two liens) and Discover Bank (two liens).  The trustee maintains that he is in second position, because the lien's pre-avoidance priority has been preserved for the benefit of the estate under the plain language of § 551.

In general, Section 551 allows the bankruptcy estate to assume the rights of the holder of an avoided lien, and prevents junior lienholders from moving up in priority upon the avoidance of a senior lien.  See In re Investors & Lenders, Ltd., 156 B.R. 145, 147-48 (Bankr. D.N.J. 1993); see also In re Blanks, 64 B.R. 467, 469 (Bankr. E.D.N.C. 1986) ("According to the legislative history [of § 551], 'the section as a whole prevents junior lienors from improving their position at the

expense of the estate when a senior lien is avoided'").[5]  However, the lien is taken as it is, such that the trustee

> "'steps only into the creditor's shoes and only obtains those rights which the creditor retains.'"  Barnett Bank of South Fla. v. Weitzner (In re Kavolchyck), 164 B.R. 1018, 1024 (S.D. Fla. 1994) (quoting In re McCorhill Pub., Inc., 86 B.R. 783, 795 (Bankr. S.D.N.Y. 1988)).  Thus, because "the [bankruptcy] estate obtains no greater rights than the secured creditor possessed" the trustee who successfully avoids an unperfected lien, succeeds to that interest as an unperfected, unsecured creditor and will not gain priority over other, existing properly perfected lienholders. [Walker v. Elam (In re Fowler), 201 B.R. 771, 781 (Bankr. E.D. Tenn. 1996)].  See also, Connelly v. Marine Midland Bank, N.A., 61 B.R. 748, 750 (W.D.N.Y. 1986) (finding that "preservation alone does not 'enhance the status of the trustee's lien so that if [the avoided liens] would have been defeated by the junior claimants while in the hands of the lienholders, the are also vulnerable in trustee's.'") (quoting In re Tri-Sonic, Inc., 1 B.R. 138, 142 (Bankr. N.D. Tex. 1979)); In re Appalachian Energy Industries, Inc., 25 B.R. 515, 517 (Bankr. M.D. Tenn. 1982) ("Section 551 cannot be utilized by the trustee to cure defective liens to the detriment of other properly perfected secured creditors").

Montoya v. Litton Loan Servicing, LP (In re Beltramo), 367 B.R. 825, 828 (Bankr. D. N.M. 2007). See also, Bryant v. Secretary, U.S. Dept. of Agric., 227 B.R. 89 (W.D. Va. 1998) (holding that although certain unperfected purchase money liens were preserved for the estate pursuant to § 551, a later acquired lien had priority based on its properly perfected status).  Thus, "[p]reservation is just that.  It simply puts the estate in the shoes of the creditor whose lien is avoided.  It does nothing to enhance (or detract from) the rights of that creditor viz-a-viz other creditors." Carvell v. Bank One, Lafayette, N.A., 222 B.R. 178, 180 (B.A.P. 1st Cir. 1998); see also, In re DeLancey, 94 B.R. 311, 313 (Bankr. S.D.N.Y. 1988).

---

[5] Citing H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 376 (1977); S. Rep. No. 95-989, 95th Cong., 2d Sess. 91 (1978).

In determining the property rights inherited from the holder of the avoided lien, bankruptcy courts look to state law. See, e.g., Butner v. United States, 440 U.S. 48, 55 (1979) ("Property interests are created and defined by state law.") Thus, although § 551 preserves an avoided lien for the benefit of the estate, state law governs the priority of liens and therefore dictates what that benefit is, if any. Additionally, it has been observed that in light of the automatic nature of lien preservation under § 551, "the preserved interest need not always benefit the estate." Dunes Hotel Assocs. v. Hyatt Corp., 245 B.R. 492, 502 (D.S.C. 2000) (citing legislative history of § 551 and Collier on Bankruptcy for the concept that preservation may not always benefit the estate).

Further, it matters whether a lien is avoided based on some defect such as the invalidity of a deed of trust, or a failure of perfection, as opposed to lien avoidance based on preferential or fraudulent transfers. As summarized by Collier's:

> when a trustee avoids a prepetition security interest because the secured party has failed properly to perfect or record its lien, the avoided lien held by the estate is subject to the same state law defect and is likely subordinate to liens properly perfected or recorded prepetition. On the other hand, if the lien is avoided not on the basis of a state law defect where the trustee avoids the lien under section 544(a)(1), but instead, is avoided as a preference under section 547 or as a fraudulent transfer under section 548, the estate steps into the shoes of the holder of the avoided lien and the lien's priority remains the same as it was with respect to other liens prior to the avoidance.

5 Collier on Bankruptcy, ¶ 551.02 at 551-4 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. rev. 2013); see also, Carvell, 222 B.R. at 180 (noting that in preference actions, for example, if an avoided lien's priority was not retained, avoidance would create a windfall for junior lienors, in the form of a benefit unattainable outside of bankruptcy).

Finally, the trustee argues that in addition to preserving the Abreu lien for the estate, § 551 preserves "all rights of reformation." Trustee's Supp. Memo., Doc. No. 10. Specifically, the trustee

10

contends that he could seek reformation of the Abreu Deed of Trust despite Ms. Abreu's inability to reform the deed of trust pursuant to the court's holding in the Avoidance Action. However, the principles applied in the Avoidance Action to preclude Ms. Abreu's reformation of the deed of trust also preclude reformation by the trustee. As stated in the Avoidance Action, and by numerous other courts in this district, "reformation is not available where an intervening lien creditor, without knowledge of the mistake or deficiency, 'has advanced new consideration or incurred some new liability on the faith of the apparent ownership.'" Warren v. Abreu (In re Skumpija), 494 B.R. 822, 831 (Bankr. E.D.N.C. 2013) (quoting In re Law Developers, 404 B.R. 136, 140 (Bankr. E.D.N.C. 2008), which quotes M&J Fin. Corp. v. Hodges, 230 N.C. 580, 582, 55 S.E. 2d 201, 202 (N.C. 1949)). When this tenant of North Carolina case law was applied in the Avoidance Action, the trustee's status as a hypothetical lien creditor prevented reformation of the Abreu Deed of Trust. Similarly, if the trustee sought to reform the Abreu Deed of Trust, reformation would be precluded by BB&T's and Discover's status as actual intervening lien creditors based on the judicial liens acquired on September 22, 2010 by BB&T and on November 23, 2010 and November 30, 2010 by Discover.[6] As such, reformation is not available to the trustee, and therefore he cannot improve his fifth position priority status on that basis.[7]

In summary, the trustee stepped into Ms. Abreu's shoes, inheriting only the property rights she retained upon avoidance of the lien. Because the Abreu Deed of Trust was held to be invalid

---

[6] Although not scheduled, these judgment liens are referenced in the complaint, as well as the answer to the complaint, in connection with Civil Actions No. 09 CVD 1276, 10 CVD 789 and 10 CVD 813, respectively.

[7] This case is both factually and legally distinguishable from In re Price, 97 B.R. 264 (Bankr. E.D.N.C. 1989), cited by the trustee, which involved avoidance under § 544(a)(3) and *rescission* of the cancellation of a valid deed of trust.

11

under state law in the Avoidance Action, what remains is an unsecured debt. Therefore, the trustee does not retain the second priority position previously asserted by Ms. Abreu. Instead, the trustee is relegated to fifth place, behind the secured creditors, by virtue of the nature of the avoidance of the lien. As such, a sale of the Subject Property would have to yield more than the $438,670.63 in liens held by BB&T and Discover Bank, plus any ad valorem taxes due, auctioneer fees, and the trustee's commission, in order to be in the best interest of the estate. Although the trustee initially contended that the Subject Property's value is that which the plaintiff indicated on Schedule C, i.e., the Chatham County tax value of $515,417, despite the plaintiff's valuation of $400,000 on Schedule A, the trustee acknowledged at a subsequent hearing that if he is found to be in fifth position in terms of priority, there is not enough equity to sell the Subject Property. Thus, in light of the substantial liens that must be satisfied before the estate would receive any proceeds of the proposed sale of the Subject Property, the court finds that the proposed sale is not in the best interest of the bankruptcy estate.

Based on the foregoing, the court finds cause to set aside the Sale Order, as it was premised upon an error of law. Accordingly, plaintiff's motion for preliminary injunction, which has been construed as a motion to reconsider the Sale Order, is **ALLOWED** and the Sale Order is vacated.

Additionally, since this holding is determinative of the debtor's pending motion to abandon, the court also finds that the Subject Property is of inconsequential value and benefit to the estate and the motion to abandon is **ALLOWED**.

    **SO ORDERED.**

**END OF DOCUMENT**